**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5788

ALEXIS ANTONIO GARCIA-RIVAS, a/k/a
Alex A. Garcia,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., Chief District Judge.
(CR-95-101)

Submitted: May 7, 1996

Decided: May 28, 1996

Before MURNAGHAN and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William E. Martin, Federal Public Defender, Eric D. Placke, Assistant
Federal Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Michael F. Joseph,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Alexis Antonio Garcia-Rivas was arrested in the Greensboro Piedmont International Airport on April 11, 1995 when airport police found cocaine base in his luggage. He was indicted on the charge of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1988). Garcia-Rivas's motion to suppress the evidence found in his luggage was denied, and he entered a conditional guilty plea reserving the right to appeal the suppression ruling. The district court sentenced Garcia-Rivas to 121 months imprisonment, to be followed by five years of supervised release. This appeal followed.

I

In mid-afternoon on the day in question, Officer Bradshaw of the Piedmont Triad International Police Department was directed to investigate a carryon bag which had been left "all day" near a curb-side taxi-stand, next to a trash can. This was not an uncommon occurrence, as between thirty and forty bags had been found beside trashcans at the airport in the past three years. Bradshaw had never found drugs in a found bag. This bag was locked and had a Continental Airlines tag reading: "Alex Garcia, 105 Bennett Ave., New York, New York, 10033." Bradshaw testified that often an outer tag did not match identification found in the bag.

In accordance with the airport authority's written procedure for found property, Bradshaw had the bag X-rayed to ensure it could be opened safely. The color X-ray revealed two items that could not be identified, but by their color appeared to be organic material. Bradshaw then searched the bag to look for identification, and to make sure it contained no hazardous material, explosive devices, or perishable items so that he could place it in lost and found. Two shoes in the bag each held a round object secured with duct tape and smeared with a "gelatin substance." These packages contained cocaine base.

2

Just after the bag was opened, Bradshaw received a radio call that Garcia-Rivas was at the lost and found area looking for his bag. When Garcia-Rivas identified this bag as his, Bradshaw arrested him.

II

At the suppression hearing, Officer Bradshaw testified and the airport's written procedures regarding found items was introduced. Under this procedure, found items "will be searched for: (1) ownership of the item; (2) the presence of explosives of hazardous materials . . . (3) the presence of perishable or food items .. . ." The district court held that these procedures were reasonable and did not infringe Garcia-Rivas's Fourth Amendment rights. We review this legal issue de novo. United States v. Han, 74 F.3d 537, 540 (4th Cir. 1996).

We hold this search to be a valid exercise of the community caretaker role often exercised by police, and analogous to inventory searches which have been upheld often by the Supreme Court. Such searches, when reasonable on the facts of the case and conducted under standard procedures, do not violate the Fourth Amendment. South Dakota v. Opperman, 428 U.S. 364, 374-76 (1976). A court must examine the underlying government interests justifying the inventory--for example, to verify identity, to inhibit theft of impounded property, to deter false claims against the police, and to remove dangerous items. If the procedures followed by the police are a reasonable way to achieve those goals, the search is valid. Illinois v. Lafayette, 462 U.S. 640, 646-48 (1983). If the methods are reasonable, it is irrelevant that less intrusive methods to attain the same goals are available. Colorado v. Bertine, 479 U.S. 367, 374 (1987).

Here, the goals of the policy are set out in writing: to determine ownership of the item and to ensure the safety of and sanitary environment for airport employees. The procedures followed are reasonable methods to attain these goals. Garcia-Rivas's arguments that less intrusive methods exist to achieve them are irrelevant.

Garcia-Rivas contends that the search cannot be upheld as an inventory search because no inventory was made or intended, relying on language in Florida v. Wells, 495 U.S. 1, 4 (1990). But the search was done to accomplish clearly announced goals consistent with a

community caretaker function. There is no suggestion that the search was intended as part of a criminal investigation, or that airport authorities or police were aware that a crime had been committed.

Therefore, we affirm the district court's ruling that the search was valid. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4